(C.D. 2133)

NORDBERG MANUFACTURING COMPANY *v.* UNITED STATES

United States Customs Court, Third Division

(Decided November 6, 1959)

*Fairchild, Foley & Sammond* (*John R. Collins* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: This is a protest against the collector's assessment of additional duty on three Brown-Boveri turbochargers in the sum of $1,311.36. It is claimed that the said additional duty should be refunded, together with interest thereon, as allowed by law.

This case was submitted at the trial upon a stipulation of facts received in evidence as plaintiff's exhibit 1. Counsel for the Government requested that the stipulation be admitted with the understanding that in the event that any dates or figures are not in accord with those on the official papers, the official papers be taken account of. This was agreed to by counsel for the plaintiff.

According to the stipulation and the official papers, the facts are as follows:

The three turbochargers involved herein were imported into the United States from Switzerland on October 3, 1952, October 3, 1952, and January 23, 1953, respectively. At the time of importation, duty in the sum of $1,801.94 was paid. Subsequently, the turbochargers were placed in and became component parts of Diesel engines manufactured by the plaintiff, and, together with said Diesel engines, were exported to Canada on December 6, 1952, January 22, 1953, and February 20, 1953, respectively. Drawback was claimed on said turbochargers at the time of exportation and was received in the amount of $1,783.92.

After about 5 years of use in Canada, the three turbochargers were returned to the plaintiff as part of an agreement whereby plaintiff sold new turbochargers and other parts for the Diesels of the Canadian company. Efforts were made to sell the turbochargers to plaintiff's Canadian customer, but the offer was not accepted and they were imported in their used condition.

The said turbochargers were reimported into the United States from Canada on November 4, 1957. They were entered as part of a shipment of engine parts claimed to be free of duty under paragraph

1615 of the Tariff Act of 1930, as American goods returned. They were subsequently appraised at $1,312.50 each, and duty was assessed on the original liquidation of April 25, 1958, at 12 per centum ad valorem under paragraph 372 of the Tariff Act of 1930, as modified, in the total amount of $472.56. On a reliquidation, dated June 11, 1958, additional duty in the sum of $1,311.36 was assessed, to make the total duty of $1,783.92 equivalent to the drawback received at the time of exportation. The additional amount of $1,311.36 was paid under protest.

Paragraph 1615 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (52 Stat. 1077), by the Customs Simplification Act of 1953 (67 Stat. 507), and by 68 Stat. 731 (T.D. 53584), provides in subparagraph (a) for the free entry of articles, the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition while abroad, and for the free entry of articles, previously imported, if reimported, without having been advanced in value or improved in condition, after having been exported under lease to a foreign manufacturer and reimported by or for the account of the original importer and exporter. Subparagraphs (b), (c), and (d) provide for the free entry of certain other articles. The paragraph continues:

(e) The foregoing provisions of this paragraph shall not apply to—

(1) Any article upon which an allowance of drawback has been made under section 313 of this Act or a corresponding provision of a prior tariff Act, unless such article is in use at the time of importation as the usual container or covering of merchandise not subject to an ad-valorem rate of duty;

\* \* \* \* \* \* \*

(f) Upon the entry for consumption or withdrawal from warehouse for consumption of any article previously exported, which is excepted from free entry under this paragraph by the foregoing subparagraph (e) and is not otherwise exempted from the payment of duty, there shall be levied, collected, and paid thereon, in lieu of any other duty or tax, a duty equal to the total duty and internal-revenue tax, if any, then imposed with respect to the importation of like articles not previously exported from the United States, but in no case in excess of the sum of customs draw-back, if any, proved to have been allowed upon the exportation of such article from the United States plus the amount of the internal-revenue tax, if any, imposed at the time such article is entered for consumption or withdrawn from warehouse for consumption upon the importation of like articles not previously exported from the United States. \* \* \* When because of the destruction of customs records or for other cause it is impracticable to establish whether drawback was allowed, or to determine the amount of drawback allowed, on a reimported article excepted under subparagraph (e), there shall be assessed thereon an amount of duty equal to the estimated drawback and internal-revenue tax which would be allowable or refundable if the imported merchandise used in the manufacture or production of the reimported article were dutiable or taxable at the rate applicable to such merchandise on the date of importation, but in no case more than the duty and tax that would apply if the article were originally imported. \* \* \*

In the instant case, the additional duty of $1,311.36 was assessed by the collector on the theory that duty on reimported merchandise on which drawback had been allowed on exportation must be equal to the drawback. Plaintiff claims that this is an erroneous interpretation of the statute. The Government has not submitted a brief but has filed a statement that, upon consideration of the record and plaintiff's brief, it does not desire to do so.

Paragraph 1615, as originally enacted, contained a proviso:

* * * That this paragraph shall not apply to any article upon which an allowance of drawback has been made, the reimportation of which is hereby prohibited except upon payment of duties equal to the drawbacks allowed; * * *.

This paragraph was rewritten by the Customs Administrative Act of 1938, omitting the above-quoted proviso and providing that, upon entry of any article previously exported, excepted from free entry by subparagraph (e), there should be levied, collected, and paid, in lieu of any other duty or tax, a duty equal to the total duty or internal revenue tax, if any, then imposed with respect to the importation of like articles not previously exported from the United States, but in no case in excess of the sum of the drawback allowed and the amount of internal revenue tax, if any, imposed at the time of entry on like articles not previously exported. The purpose of this language, according to a statement of the Treasury Department submitted at a hearing before a Subcommittee of the Senate Finance Committee, was to provide:

* * * that domestic products exported with benefit of draw-back of duties paid on component materials or without payment of internal-revenue taxes may be returned under conditions no less favorable than those applicable at the time of importation to like articles of foreign origin. [Hearings before a Subcommittee of the Committee on Finance, United States Senate, 75th Congress, 3d session, pp. 10–17.]

Thereafter, by the Customs Simplification Act of 1953, new language was added to provide a means of determining duty on such reimported merchandise, where it was impracticable to determine the amount of drawback allowed. It was further provided that, in no case, should the amount assessed be more than the duty and tax which would apply if the article were originally imported.

By these provisions, Congress has manifested an intent that the total duty and tax to be levied on reimported merchandise on which drawback has been allowed should be neither more than the amount of drawback previously allowed, plus internal revenue tax, if any, nor more than the amount of duty and tax then assessable on like articles not previously exported.

This has been the consistent interpretation of the Treasury Department. Subsequent to the enactment of the Customs Adminis-

trative Act of 1938, the customs regulations were amended in conformity therewith (T.D. 49658), and it was provided in article 399(c):

> * * * If the amount of drawback allowed has been proved, the duty assessed shall be in the amount of the drawback plus the amount of any internal-revenue tax imposed with respect to the importation of like articles not previously exported from the United States, or in the amount of the duty and any internal-revenue tax imposed on the importation of like articles not previously exported from the United States, whichever is the lower.

The Customs Regulations of 1943 provided:

> 10.3 Drawback; internal-revenue tax.—(a) * * * If an allowance of drawback on the exportation from the United States of the imported article is established, duty shall be assessed in an amount equal to such drawback, plus an amount equal to any internal-revenue tax which may be assessable in accordance with this paragraph; but in no case shall duty equal to drawback, or to drawback and internal-revenue tax, be assessed in an amount in excess of the ordinary customs duty and internal-revenue tax applicable to like articles of foreign origin. * * *

After the Customs Simplification Act of 1953 was enacted, the regulations were amended in conformity therewith (T.D. 53336), and it was provided in section 10.3(a):

> * * * in no such case shall there be assessed more than an amount equal to the duty and tax that would apply if the returned article were wholly of foreign origin and originally imported.

Therefore, if the turbochargers here involved are considered articles upon which an allowance of drawback has been made, they are subject to duty only in the amount assessable on like articles not previously exported.

Although the stipulation states that drawback was claimed and received on said turbochargers at the time of exportation, it is evident that drawback must have been allowed on the Diesel engines into which the turbochargers were placed, since drawback is permitted under section 313(a) of the Tariff Act of 1930 only on the exportation of articles manufactured or produced in the United States with the use of imported merchandise (with an exception not here pertinent). The articles which came back to the United States, however, were the turbochargers, not the Diesel engines. The question arises, therefore, as to whether the turbochargers are articles covered by paragraph 1615, *supra.*

A similar situation was before the court in *Chas. Adler's Sons, Inc.* v. *United States*, 21 C.C.P.A. (Customs) 573, T.D. 46992, which involved the proviso in paragraph 1615, as originally enacted. Pearls had been imported into the United States and used in the manufacture of pendants, which were exported with benefit of drawback. The pearls were subsequently removed from the pendants while abroad and reimported into the United States. Duty was assessed by the

collector in an amount equivalent to the drawback previously allowed on the pendants. The court stated (pp. 577–578):

The duty here involved was collected upon the assumption that the proviso in paragraph 1615, *supra*, authorized such collection. It provides that "this paragraph shall not apply to any article upon which an allowance of drawback has been made * * *." Obviously, the articles thus referred to are those which. but for the proviso, would come in free under the language of the paragraph preceding the proviso, and the only articles there mentioned are articles "the growth, produce, or manufacture of the United States." Clearly the pearls here in question are not the "growth, produce, or manufacture of the United States," and hence the proviso is not applicable to said pearls. Moreover, it is our view that, irrespective of the language preceding the proviso, the language of the proviso itself excludes its application to the pearls here in question. The particular language to which we refer is in the opening sentence, reading: "That this paragraph shall not apply to any article upon which an allowance of drawback has been made * * *." No allowance of drawback upon said pearls was made, but, as hereinbefore shown, the allowance of drawback was upon the manufactured articles, to wit, jewelry containing said pearls, the duties paid upon imported materials used in such manufactured articles being refunded to the extent of 99 per centum thereof.

We therefore hold that, under the stipulated facts, paragraph 1615, *supra*, has no application to the pearls here involved.

In the instant case, also, drawback could have been allowed only upon the Diesel engines manufactured in the United States and not upon the turbochargers. Subparagraphs (e) and (f) of paragraph 1615, as amended, apply only to articles upon which an allowance of drawback has been made. Since none was made or could have been made on the turbochargers *per se*, the said subparagraphs are inapplicable and duty must be assessed upon the turbochargers as merchandise of foreign origin, in accordance with the appraised value and the pertinent classification provisions in effect at the time of reimportation.

For the reasons stated, we hold that the collector's original liquidation assessing duty at 12 per centum ad valorem under paragraph 372 of the Tariff Act of 1930, as modified, in the sum of $472.56 was correct and that his reliquidation assessing additional duty in the sum of $1,311.36 was erroneous.

The protest in this case includes a claim for interest on said sum of $1,311.36. It is well settled that interest can be recovered against the United States only if express consent to such recovery has been given by Congress by a specific provision in a statute or by an express stipulation in a contract entered into by agents of the United States. *United States* v. *N.Y. Rayon Importing Co., Inc.*, 329 U.S. 654; *Angarica* v. *Bayard*, 127 U.S. 251; *United States* v. *Worley*, 281 U.S. 339; *Boston Sand Co.* v. *United States*, 278 U.S. 41.

In a case arising under the act of June 10, 1890, 26 Stat. 131, which first set up the procedures now followed in customs cases, it was held

that whatever might have been the practice under former statutes, under the act of 1890, no interest could be recovered against the United States on refunds of excess of duties paid, since no provision therefor had been made. *In re Chase*, 50 Fed. 695.

In *George E. Warren Corporation* v. *United States*, 94 F. 2d 597, an action was brought for the recovery of interest on import taxes on the ground that the collection of such taxes had been in violation of treaties with Great Britain and with Germany. While the court dismissed the suit as involving a matter of international concern to be settled by diplomats, it stated, in the course of the opinion (p. 598):

* * * The petitioner has pursued the statutory remedy accorded to importers for recovery of illegally collected import duties and has obtained *the full measure of redress which that remedy gives; namely, repayment of the sums collected.* [Emphasis supplied.]

In *United States* v. *N.Y. Rayon Importing Co., Inc., supra*, it was held that the Court of Claims was precluded from awarding interest on claims for refunds of customs duties, even though the General Accounting Office had unreasonably delayed the determination of ownership of the refunds.

Section 520 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, authorizes the Secretary of the Treasury to refund excess deposits whenever it is ascertained on liquidation or reliquidation of an entry that more money has been deposited or paid as duties than required by law and provides that the necessary moneys to make such refunds are authorized to be appropriated annually from the general fund of the Treasury.

The Treasury Department Appropriation Act, 1950 (63 Stat. 356, 19 U.S.C. § 1313(a)), provided for the refund or payment of customs collections or receipts, and payment of debentures or drawbacks, bounties, and allowances, as authorized by law.

Another statutory provision, 31 U.S.C. § 711(7), repealed by 70 Stat. 943, made permanent annual appropriations—

To repay to importers the excess of deposits for unascertained customs duties, or duties or other moneys paid under protest.

These statutes are silent as to interest, and have been construed by the Treasury Department as not providing for the payment thereof. See footnote 6 to section 24.36 of the customs regulations, stating:

Payment of costs and interest upon refunds in customs cases is not allowed.

The intention of Congress to permit the recovery of interest must be expressly and specifically set forth in the statute; it may not be implied. *United States* v. *Thayer-West Point Hotel Co.*, 329 U.S. 585; *United States* v. *N.Y. Rayon Importing Co., Inc., supra.*; *Tillson* v. *United States*, 100 U.S. 43. Therefore, interest may not be recovered upon a refund of customs duties paid in excess of the amount required by law.

We hold that the plaintiff herein is entitled to recover the additional duty in the sum of $1,311.36 assessed by the collector in his reliquidation of June 11, 1958, and paid by the importer, but without interest. Judgment will be rendered accordingly.