**TIMEX CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 85–12–01810–S.**

United States Court of
International Trade.

July 13, 1988.

Howrey & Simon, Stuart H. Harris, Ralph J. Savarese and Alice T. Zalik, Washington, D.C., for plaintiff.

John R. Bolton, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Mark S. Sochaczewsky, Civil Div., U.S. Dept. of Justice, New York City, for defendant.

**OPINION**

RESTANI, Judge:

The issue in this case, which is before the court on stipulated facts, is whether bezels which were imported as part of watches are entitled to duty-free treatment as American goods returned after assembly abroad. Headnote 1(b), Subpart B, Part 1, of Schedule 8 of the Tariff Schedules of the United States (TSUS) provides that the TSUS subpart containing item 807, which provides for such duty-free treatment, "shall not apply to any article exported— ... (b) with benefit of drawback." [1]

The relevant facts are as follows: Plaintiff Timex imported crystals into the United States. Duties were paid. Timex com-

---

1. Item 807, Tariff Schedules of the United States (1981) covers the following:

Articles assembled abroad in whole or in part of fabricated components, the product of the United States, which (a) were exported in condition ready for assembly without further fabrication, (b) have not lost their physical identity in such articles by change in form, shape, or otherwise, and (c) have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating, and painting.

and specifies the rate of duty as:

A duty upon the full value of the imported article, less the cost or value of such products of the United States (see headnote 3 of this subpart)

bined domestic bezels and the imported crystals to produce "bezel crystal assemblies," which were then exported. Drawback of duties was claimed and allowed under section 313(a) of the Tariff Act of 1930, 19 U.S.C. § 1313(a) (1982).[2] The "bezel-crystal assemblies" were assembled with other parts to form watches. Subsequently, the watches were imported into the United States, at which time plaintiff sought item 807 treatment for the domestic bezels. The duty-free treatment sought was denied by the United States Customs Service on the basis of headnote 1(b), Subpart B, Part 1 of Schedule 8.

The issue framed by the parties is—what is meant by the words of the headnote, *i.e.*, "article exported ... with benefit of drawback." In support of its interpretation of the headnote at issue defendant cites *Charles Adler's Sons, Inc. v. United States;* 21 CCPA 573 (1934), *Import–Export Service of New Jersey v. United States*, 46 Cust.Ct. 4 (1961); and *Nordberg Mfg. Co. v. United States*, 43 Cust.Ct. 235 (1959). All three decisions interpreted paragraph 1615 of the free list of the Tariff Act of 1930, ch. 497, § 201, 46 Stat. 672, 674, *reprinted, as amended*, in 19 U.S.C. § 1201 app. 3350–51 (1958) (repealed 1963), which the parties have described as a predecessor provision to item 807 and the pertinent headnote. *Adler's* and *Nordberg* involved the issue of the dutiable status of previously imported components of articles produced in the United States and exported, which articles were disassembled abroad. *Import–Export* involved processing abroad which resulted in reimportation of scrap.[3] Drawback had been obtained upon exportation of the complete articles. In particular, *Adler's* involved imported pearls which were incorporated in the United States into pendants. Drawback was obtained upon exportation of the pendants. Thereafter, the pearls were removed from the pendants and were imported separately. The court ruled that the pearls should be treated as newly imported pearls on the ground that the pearls were not American goods returned, and that the provisions applicable to articles on which drawback had previously been paid did not apply to the pearls, as they were not the articles, *i.e.*, pendants, that were "exported with benefit of drawback." 21 CCPA at 576–577.

Defendant argues that the interpretation in *Adler's* of the former American goods returned statute mandates that item 807 treatment be denied for any component of the bezel-crystal assembly because the bezel-crystal assembly was an article exported with benefit of drawback. Plaintiff avers that the opposite result is compelled by the same precedent. It argues that the *bezel by itself* was not exported with benefit of drawback therefore the headnote does not prevent item 807 treatment for the bezel. Plaintiff further states that it was the intent of Congress in promulgating the headnote at issue only to prevent avoidance of duties through use of both item 807 and drawback, not to prevent item 807 treatment for domestic products which did not occasion drawback.

There are several reasons why *Adler's* and like cases cannot be applied directly to the situation at hand. First, at the time of *Adler's*, paragraph 1615 clearly allowed duty-free treatment for articles not advanced in value or improved abroad so long

**2.** 19 U.S.C. § 1313(a) (1982) reads as follows:
  **(a) Articles made from imported merchandise**
  Upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the merchandise so used shall be refunded as drawback, less 1 per centum of such duties, except that such duties shall not be so refunded upon the exportation of flour or by-products produced from wheat imported after ninety days after June 17, 1930. Where two or more products result from the manipulation of imported merchandise, the drawback shall be distributed to the several products in accordance with their relative values at the time of separation.

**3.** In *Import–Export*, the majority opinion rests on failure of proof that that article in question was previously exported. The concurring opinion finds that the article was not a previously exported article on which drawback was obtained.

as any drawback obtained on the article were repaid.[4] The issue in *Adler's* was not whether duty-free treatment was to be provided but rather, whether entry should be premised upon repayment of drawback or upon payment in full of whatever ordinary duties applied at the time of entry. Thus, the *Adler's* court looked to whether the specific imported article had received an allowance of drawback. Similar provisions are now found in Subpart A of part 1 of Schedule 8, entitled "Articles not Advanced or Improved Abroad." Items 804.10 and 804.20 of that subpart specifically refer to repayment of drawback. In keeping with this express provision for recovery of drawback, these sections are excluded from the coverage of Headnote 1 of Subpart A which, like the headnote at issue, indicates that the subpart does not apply to articles exported with benefit of drawback.

Over the years paragraph 1615 was amended and at the time of repeal the portions at issue in *Adler's* were closely reflected in paragraph 1615(a), (e) and (f). A practice developed, however, under paragraph 1615 that allowed duty-free treatment if U.S. components of articles assembled abroad were segregable. The theory was that such component articles were not advanced or improved. This approach became unnecessary and was abandoned when item 807 was enacted. *See* 10 United States Tariff Commission, *Tariff Classification Study* 15 (1960). Item 807 and other items, chiefly derived from paragraph 1615(g),[5] now compose Subpart B of part 1 of Schedule 8, "Articles Advanced or Improved Abroad." Thus, the structure of the statute at issue in *Adler's* was quite

different from that of the statute at issue here.

Next, in *Adler's* the court was correct in finding that paragraph 1615 did not apply to the disassembled merchandise, *i.e.*, the pearl, because it was not of U.S. growth or manufacture. 21 CCPA at 577. This holding fully resolved the dispute. The *Adler's* discussion of drawback was unnecessary and obviously occasioned by the trial court's statement that the pearl had been exported with benefit of drawback.

Applying the drawback discussion of *Adler's* literally one would come to the conclusion that the bezel-crystal assembly is the article benefited by drawback and thus, the headnote would not be applicable to the bezel alone. It is only by expanding the words "articles exported with benefit of drawback" to apply to the components of such articles, as the court in *Adler's* would not do, that defendant obtains the reading of the statute which it seeks here. The choice in *Adler's* was between duties in the amount of the drawback or ordinary duties at time of entry. There is no such option in item 807. Under the current statute, if the drawback headnote is inapplicable one is left to determine what adjustment to duties, if any, is provided by the body of item 807.

As to the body of item 807, defendant wishes the court to read the item as if it does not permit one to look behind the bezel-crystal assembly to determine whether any of its parts are of U.S. manufacture. Without providing any citation, defendant asserts that for item 807 purposes the bezel ceased to exist when it was substantially transformed into the bezel-crystal assem-

**4.** At the time of *Adler's* the relevant portions of paragraph 1615 read as follows:

> Articles the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means if imported by or for the account of the person who exported them from the United States; ... but proof of the identity of such articles shall be made, under general regulations to be prescribed by the Secretary of the Treasury; ...

> *Provided,* That this paragraph shall not apply to any article upon which an allowance of drawback has been made, the reimportation of which is hereby prohibited except upon payment of duties equal to the drawbacks allowed....

Tariff Act of 1930, ch. 497, § 201, 46 Stat. 672, 674 (repealed 1963).

**5.** Article 1615(g) concerned repairs, alterations and processing abroad of certain articles. Customs Simplification Act of 1954, ch. 1213, § 202, 68 Stat. 1136, 1137–38; 19 U.S.C. § 1201 app. 3351 (1958) (repealed 1963).

bly.[6] This argument has appeal. Certainly the bezel must be considered to have been substantially transformed into a new product if drawback was obtained, as it was here. Customs' task would seem to be simpler and would avoid complicated fictions, as intended by item 807, if Customs does not have to constructively disassemble the bezel-crystal assembly in order to ascertain its dutiability. But would it really be simpler or less of a fiction? First, Customs has to constructively disassemble any article assembled abroad into its U.S. and non-U.S. components in order to determine the extent of its dutiability under item 807. *See* 19 C.F.R. § 10.24(a)(1) (1987). Such analysis may involve the constructive disassembly of substantially transformed articles, as processes which are within the guidelines of item 807 nonetheless may involve a substantial transformation. The tests are not the same. Second, if Customs cannot give duty-free treatment to U.S. manufactured items substantially transformed in the United States, then instead of focusing only on what occurs abroad, as the statute directs, Customs also will be required to focus on what occurred in the United States. Thus, neither is defendant's interpretation a simplification nor is it more grounded in reality.

Next, there are ramifications of defendant's interpretation which it may not have foreseen. Under defendant's view that one only looks at the U.S. article in its exported form, many disassembled U.S. articles would not qualify for item 807 treatment whether or not drawback were involved. For example, assume a U.S. manufactured plastic sheet with pre-stamped punch-out parts is exported and no drawback is claimed. It is disassembled abroad and the punch-out parts are put into different articles. The sheet is the exported U.S. product. If Customs cannot look behind the sheet to the punch-out parts which compose it, duty-free treatment could not be provided such parts.[7] Inasmuch as 19 C.F.R. § 10.14(a) (1987) gives a similar example (Example 2) as a product warranting item 807 treatment, the court doubts Customs wishes its reading to go this far.

On the other hand, plaintiff's alternative interpretation of the statutory scheme adopting *Adler's* in its most literal form and rejecting defendant's interpretation of the body of item 807 does not avoid duty-free treatment for imported articles which are not intended to have duty-free treatment. For example, if the bezels had been made with imported raw materials and the bezel-crystal assemblies were benefited by drawback of duties on both the imported raw materials and the imported crystals, under this literal view double avoidance of duties would occur. That is, the bezels would qualify as U.S. fabricated articles under item 807, and because the headnote would not apply to the bezels as an article distinct from the bezel-crystal assembly, duties would be avoided on the imported raw materials. It is exactly this problem that the headnote was designed to avoid. *See* discussion of *Balfour v. Sullivan*, 19 F. 578 (9th Cir.1884), *aff'd* 30 L.Ed. 962 (1887) in *Adler's* at 578.

While citing statutory purpose, the parties both seem to have forgotten the two statutory purposes at issue here. The drawback statute encourages U.S. manufacture.[8] Item 807 essentially does the same. Congress, however, did not wish both item 807 treatment and drawback of

---

6. 19 C.F.R. § 10.12(d)-(e) (1987) defines a "fabricated component[ ], the product of the United States" under item 807 generally in terms of substantial transformation. The same standard applies for drawback purposes. *See National Juice Products Ass'n v. United States*, 10 CIT ——, 628 F.Supp. 978, 988–9 n. 14 (1986).

7. This example is intended to resemble the case of the silicon chips which were arranged according to pre-marked streets for separation in *United States v. Texas Instruments*, 64 CCPA 24, 545 F.2d 739 (1976). The cutting of the chips did not constitute further fabrication under item 807.

8. *See Lockheed Petroleum Services Ltd. v. United States*, 4 CIT 25, 28, 557 F.Supp. 583 (1982) *rev'd on other grounds*, 709 F.2d 1472 (Fed.Cir.1983) ("The purpose underlying the granting of drawback of duties is to encourage the production of articles for export in the United States, thus increasing domestic manufactures, increasing foreign commerce and aiding American industry and labor" (citations omitted)).

duties for the same articles. *See* Customs Ruling 216,162, 20 Cust.B. & Dec. 579, 580 (August 12, 1983) ("[t]he intent of [Headnote 1(b)] is to prevent one from using both drawback and 807 to avoid duties.")

Part of the solution to the dilemma posed by the parties' interpretation is provided in *General Instruments Corp. v. United States*, 60 CCPA 178, 480 F.2d 1402 (1973). That case allowed item 807 treatment despite dual-assembly abroad. That is, the court ignored the fact that more than one new foreign article was created. Although the case is distinguishable, its language is instructive.

> The inquiry under item 807.00 should not focus on the identification of possible sub-units of the whole product and the relationship between the disputed element and such sub-units. Instead, classification under item 807.00 depends upon the relationship of the disputed element to the whole.
>
> ... The only reasonable interpretation of item 807.00 is that all elements that go into the imported final article which meet the conditions the item imposes on the fabricated components are subject to the exclusion it provides.

*Id.* 480 F.2d at 1405–06. Here, there is no dispute that the bezel was fabricated in the United States. Thus, Customs should concentrate on the relation of the bezel to the whole and look at what happened to the bezel abroad. This is the focus of item 807. Likewise, the headnote is a part of the item 807. It should similarly be read to focus on the disputed item. Was the bezel benefited by drawback? The answer is no, not because of the inapplicable reasoning of *Adler's*, but because the bezel did not occasion drawback. It was not the imported product, as the crystal was, and it was not made from imported materials. Thus, for purposes of item 807 it was not the article benefited by drawback.

When item 807 was enacted it left the wording of earlier statutes and the reasoning of earlier cases behind. It is a new less-tortured statute; it should not be burdened with outmoded technicalities which lead to absurd results but should be read to effectuate the intent of Congress.

Judgment shall enter for plaintiff.

## JUDGMENT