**CHRYSLER MOTORS CORPORATION, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 89–05–00252.**

United States Court of International Trade.

Dec. 11, 1990.

Ross & Hardies, Joseph S. Kaplan, for plaintiff.

Stuart M. Gerson Asst. Atty. Gen., Joseph I. Liebman, Attorney in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Al J. Daniel, Jr., for defendant.

Beveridge & Diamond, P.C., Alexander W. Sierck, for amici curiae Automotive Parts and Accessories Ass'n, American Iron and Steel Institute, and the Specialty Steel Industry of the U.S.

## MEMORANDUM OPINION

CARMAN, Judge:

This action was commenced by plaintiff pursuant to 28 U.S.C. § 1581(a) (1988) contesting the denial of its protest of the liquidation of its drawback entry without the allowance of drawback, which plaintiff sought under section 313 of the Tariff Act of 1930, *as amended*, 19 U.S.C. § 1313(j) (1988).[1]

Defendant now moves pursuant to Rule 56 of the Rules of this Court for summary judgment and to dismiss the complaint. Defendant also moves this Court to strike the affidavit of George C. Steuart, an attorney and former employee of the United States Customs Service, as an attachment to plaintiff's cross-motion for summary judgment on the grounds that the affidavit does not contain competent evidence concerning any pertinent factual matter and that Mr. Steuart's legal opinions concerning the regulations are inadmissable as evidence.

Plaintiff, opposing defendant's motion for summary judgment, cross-moves for summary judgment, requests the Court to declare that the transfer of merchandise to a foreign-trade zone for the purpose of manufacture constitutes *exportation* (entitling plaintiff to drawback), and contends that T.D. 89–4 is erroneous and unlawful.[2] Plaintiff further requests this Court to direct that the entry which is the subject of this action be reliquidated with drawback allowed.

Amici support defendant's motion for summary judgment.

## FACTS

The following facts are not in dispute. Plaintiff, a manufacturer of motor vehicles in the United States, assembles certain motor vehicles in designated foreign-trade

---

1. As defendant points out in its *Memorandum of Law in Support of Defendant's Motion for Summary Judgment* (Defendant's Memorandum) at 2, an earlier action challenging T.D. 89–4 (which was to become effective on February 27, 1989), was filed by plaintiff and Armatron International, Inc. on February 22, 1989, pursuant to 28 U.S.C. § 1581(h) and (i) (1988), *Chrysler Motors Corp. v. United States*, CIT Court No. 89–02–00086 (Jan. 24, 1990). This Court issued on February 23, 1989, a temporary restraining order preventing application of T.D. 89–4 as to plaintiff. Pursuant to a stipulation and order, an agreement was reached that resulted in the dissolution of the temporary restraining order. Chrysler was to file a single drawback entry with a timetable for action by the Customs Service. A new action was to be filed pursuant to 28 U.S.C. § 1581(a) (1988) if Customs denied plaintiff's claim for drawback. This action was commenced pursuant to that stipulation.

2. T.D. 89–4, 53 Fed.Reg. 52,411, 52,414 (Dec. 28, 1988) is a final interpretative rule by the Customs Service which concluded that since the Foreign Trade Zones Act provided no authority permitting merchandise to be considered exported when it was sent to a foreign-trade zone in the United States for manufacturing, no claims for drawback should be allowed. This final interpretation, which Chrysler challenges, revoked two Customs rulings, C.S.D. 84–97, 18 Cust.Bull. 1069 (1984), *republished as* C.S.D. 85–10, 19 Cust.Bull. 509 (1985) and Headquarters Ruling Letter 218551 (Jan. 29, 1986), both of which expressly permitted merchandise to be considered as exported when it was sent to a foreign-trade zone for the purpose of manufacturing. The change of position by Customs and the loss of drawback by Chrysler is the major area of dispute in the instant case.

sub-zones within the United States from sub-assemblies of domestic- and foreign-sourced components. Joint Stipulation of Facts (Joint Stip.) at 1. On March 28, 1989, plaintiff filed with defendant Customs Form 7539, Entry No. C38003381–8 seeking drawback pursuant to 19 U.S.C. § 1313(j) (1988) on previously imported duty-paid merchandise which was transferred to a foreign-trade zone for manufacturing. Joint Stip. at 1–2. The drawback entry application of plaintiff stated that the merchandise on which the drawback was sought consisted of 108 pieces described as "shaft assy fwd" (the merchandise), which was imported into the United States on December 23, 1988, by GKN Automotive, Inc. and on which $143.27 was paid in duties. On March 3, 1989, GKN Automotive, Inc. issued a certificate of delivery of imported merchandise to plaintiff covering the merchandise. Plaintiff submitted to Customs an application for admission of the merchandise to plaintiff's foreign-trade sub-zone at St. Louis, where plaintiff elected to treat the merchandise as "non-privileged foreign". Joint Stip. at 2.

The documents submitted by plaintiff to Customs in connection with plaintiff's drawback entry certified that the merchandise was transferred to the foreign-trade zone for the purpose of manufacturing in the same quantity and quality value and packaging as specified in the entry. Joint Stip. at 2.

On April 14, 1989, Customs liquidated the entry and denied drawback, stating as its reasons: "Ruling 218551 revoked by T.D. 89–4, effective February 27, 1989." Joint Stip. at 3.

Plaintiff duly protested the liquidation by Customs without benefit of drawback. Customs denied the protest. Plaintiff then commenced the instant action.

## BACKGROUND

Drawback is the reimbursement of duties paid on goods imported into the United States and then used in the manufacture or production of articles which are subsequently exported. *Nicholas & Co. v. United States*, 7 Ct.Cust.App. 97 (1916), *aff'd*, 249 U.S. 34, 39 S.Ct. 218, 63 L.Ed. 461 (1919). Customs has defined drawback in its regulations as follows:

> 'Drawback' means a refund or remission, in whole or in part, of a customs duty, internal revenue tax, or fee lawfully assessed or collected because of a particular use made of the merchandise on which the duty, tax, or fee was assessed or collected.

19 C.F.R. § 191.2(a) (1989).

Drawback is usually permitted upon the exportation of articles manufactured or produced in the United States in whole or in part with the use of imported merchandise, 1 R. Sturm, *Customs Law and Administration* § 17.1 (3rd ed. 1989). Customs duties are subject to drawback. 19 C.F.R. § 191.3 (1989). Detailed and specific provision for different types of drawback is made by statute and regulation. 19 U.S.C. § 1313(a)–(*l*) (1988); 19 C.F.R. § 191.4 (1989).[3]

---

**3.** Customs has identified through regulation 19 C.F.R. § 191.4 when drawback duties and taxes are ordinarily authorized:

(1) *Direct identification drawback.* Drawback of duties is provided for in section 313(a), Tariff Act of 1930, as amended (19 US.C. 1313(a)), upon the exportation of articles manufactured or produced in the United States wholly or in part with the use of imported merchandise.

(2) *Substitution drawback.* If imported duty-paid merchandise and duty-free or domestic merchandise of the same kind and quality are used in the manufacture or production of articles within a period not to exceed 3 years from the receipt of the imported merchandise by the manufacturer or pro-

ducer of the articles, drawback is provided for in section 313(b), Tariff Act of 1930, as amended (19 U.S.C. 1313(b)), upon the exportation of any of the articles, even though none of the imported merchandise may actually have been used in the manufacture or production of the exported articles. The amount of drawback is the same as that which would have been allowed had the merchandise used therein been imported.

(3) *Merchandise not conforming to sample or specifications or shipped without consent of consignee.* Drawback is provided for in section 313(c), Tariff Act of 1930, as amended (19 U.S.C. 1313(c)), upon the exportation of imported merchandise not conforming to sample or specifications or shipped without consent of the consignee.

Congress, which provided for the allowance of drawback claims under 19 U.S.C. § 1313(a)–(*l*) (1988), delegated authority to issue regulations to the Commissioner of Customs to describe in detail the type of drawback allowed, eligibility requirements, and procedures for filing claims. 19 C.F.R. § 191.1 (1989). Procedures for completion,

(4) *Drawback of internal-revenue taxes.* Drawback of internal-revenue taxes is provided for in section 313(d), Tariff Act of 1930, as amended (19 U.S.C. 1313(d)), upon the exportation of flavoring extracts and medicinal or toilet preparations (including perfumery) manufactured or produced in the United States in part from domestic tax-paid alcohol.

(5) *Imported salt for curing fish.* Drawback of duties is provided for in section 313(e), Tariff Act of 1930, as amended (19 U.S.C. 1313(e)), on salt imported in bond and used in curing fish. (See section 10.80 of this chapter.)

(6) *Exportation of meats cured with imported salt.* Drawback of duties is provided for in section 313(f), Tariff Act of 1930, as amended (19 U.S.C. 1313(f)), in amounts of not less than $100, upon the exportation of packed or smoked meats cured in the United States with imported salt.

(7) *Material for construction and equipment of vessels and aircraft built for foreigners.* Drawback of duties is provided for in section 313(g), Tariff Act of 1930, as amended (19 U.S.C. 1313(g)), on materials imported and used in constructing and equipping vessels and aircraft built for foreign account and ownership or for the government of any foreign country, even though these vessels and aircraft may not be exported within the strict meaning of the term.

(8) *Foreign-built jet aircraft engines processed in the United States.* Drawback of duties is provided for in section 313(h), Tariff Act of 1930, as amended (19 U.S.C. 1313(h)), in amounts of not less than $100, upon the exportation of jet aircraft engines manufactured or produced abroad that have been overhauled, repaired, rebuilt or reconditioned in the United States with the use of imported merchandise, including parts.

(9) *Direct Identification same condition drawback.* Drawback of duties is provided for in section 313(j)(1), Tariff Act of 1930, as amended (19 U.S.C. 1313(j)(1), on imported merchandise exported in the same condition as when imported, or destroyed under Customs supervision and not used within the United States before such exportation or destruction.

(10) *Substitution same condition drawback.* Drawback of duties is provided for in section 313(j)(3), Tariff Act of 1930, as amended (19 U.S.C. 1313(j)(3), on merchandise fungible with imported merchandise when exported or destroyed under Customs supervision, provided all the conditions described under § 191.141(h) are complied with.

(11) *Packaging materials.* Drawback of duties is provided for in section 313(j)(4), Tariff Act of 1930, as amended (19 U.S.C. 1313(j)(4)), on packaging material used to package or repackage merchandise exported with direct identification same condition drawback. (19 U.S.C. 1313(j) contains two paragraphs numbered (4). See first paragraph (4).)

(12) *Supplies for certain vessels and aircraft.* Drawback of duties and taxes is provided for in section 309(b), Tariff Act of 1930, as amended (19 U.S.C. 1309(b)), on articles withdrawn from bonded warehouses, bonded manufacturing warehouses, continuous Customs custody elsewhere than a bonded warehouse, or foreign trade zones and articles of domestic manufacture or production, which are laden as supplies upon certain vessels or aircraft of the United States or as supplies including equipment upon or used in the maintenance or repair of certain foreign vessels or aircraft.

(13) *Merchandise exported from continuous Customs custody.* Drawback of duties is provided for in accordance with section 557(a), Tariff Act of 1930, as amended (19 U.S.C. 1557(a)), upon the exportation to a foreign country or the shipment to the Virgin Islands, American Samoa, Wake Island, Midway Islands, Kingman Reef, Johnston Island, or Guam, of merchandise upon which duties have been paid which has remained continuously in bonded warehouse or otherwise in Customs custody since importation, provided it was exported or shipped within 5 years after the date of its importation.

(14) *Merchandise transferred to a foreign trade zone from Customs territory.* Drawback of duties and taxes is provided for in accordance with the fourth proviso of section 3 of the Foreign Trade Zones Act of June 18, 1934, as amended (19 U.S.C. 81c), on merchandise transferred to a foreign trade zone from Customs territory for the sole purpose of exportation, destruction (except destruction of distilled spirits, wines, and fermented malt liquors), or storage.

(b) *Refund of internal revenue taxes on imported distilled spirits, wines, or beer.* Refund, remission, abatement, or credit of internal revenue taxes paid or determined incident to importation on imported distilled spirits, wines, and beer is provided for in accordance with section 5062(c) Internal Revenue Code, as amended (26 U.S.C. 5062(c)), upon the exportation, or destruction under Customs supervision of these articles found after entry to be unmerchantable or not to conform to sample or specifications and which are returned to Customs custody.

19 C.F.R. § 191.4 (1989).

payment, and liquidation of drawback claims are made by Customs regulations. 19 C.F.R. § 191.61 to .73 (1989). The refusal to pay a claim for drawback is treated as final and conclusive upon all persons, including the United States, unless a protest is filed or unless a civil action contesting the denial of such a protest in whole or in part is commenced in the United States Court of International Trade. *See* 19 U.S.C. § 1514(c) (1988), 28 U.S.C. § 1581(a) (1988).

The rationale for allowing drawback is to encourage the production of articles for export in the United States, increasing foreign commerce, and assisting American labor and industry. *Tide Water Oil Co. v. United States*, 171 U.S. 210, 216, 18 S.Ct. 837, 839, 43 L.Ed. 139 (1898); *United States v. Int'l Paint Co., Inc.*, 35 CCPA 87, 90, C.A.D. 376 (1948); *United States v. Nat'l Sugar Ref. Co.*, 39 CCPA 96, 99, C.A.D. 470 (1951).

Drawback of Customs duties was recognized from the earliest times of our Republic. *See* Act of July 4, 1789, ch. II, §§ 3–4, 1 Stat. 24, 26–27 (1789). Congress has passed laws pertaining to drawback over the years, *see* Table No. III, 1 Stat. xcii-xciii (1789–1799); Rev.Stat. §§ 3015, 3016–24, 3044, 3049 (1878), and has continued to concern itself with drawback. *See supra* note 3.

The original Tariff Act of 1930, 46 Stat. 693 (1930), made provision for drawback upon exportation of imported merchandise that had been manufactured in some way in the United States. In 1980, Congress amended the Tariff Act of 1930 and authorized drawback upon imported merchandise that was subsequently exported without being manufactured (same condition drawback). Tariff Act of 1930, Pub.L. No. 96–609, 94 Stat. 3560 (1980) (codified as amended at 19 U.S.C. § 1313(j) (1988)).

Statutory provisions for the treatment of foreign merchandise in foreign-trade zones is set forth in pertinent part at 19 U.S.C. § 81c(a) (1988) as follows:

Foreign and domestic merchandise of every description, except such as is prohibited by law, may, without being subject to the customs laws of the United States, except as otherwise provided in this chapter, be brought into a zone and may be stored, sold, exhibited, broken up, repacked, assembled, distributed, sorted, graded, cleaned, mixed with foreign or domestic merchandise, or otherwise manipulated, or be manufactured except as otherwise provided in this chapter, and be exported, destroyed, or sent into customs territory of the United States therefrom, in the original package or otherwise; but when foreign merchandise is so sent from a zone into customs territory of the United States it shall be subject to the laws and regulations of the United States affecting imported merchandise:

. . . .

*Provided further*, [the Third Proviso] That if in the opinion of the Secretary of the Treasury their identity has been lost, such articles not entitled to free entry by reason of noncompliance with the requirements made hereunder by the Secretary of the Treasury shall be treated when they reenter customs territory of the United States as foreign merchandise under the provisions of the tariff and internal-revenue laws in force at that time: *Provided further*, [the Fourth Proviso] That under the rules and regulations of the controlling Federal agencies, articles which have been taken into a zone from customs territory for the sole purpose of exportation, destruction (except destruction of distilled spirits, wines, and fermented malt liquors), or storage shall be considered to be exported for the purpose of—

(1) the draw-back, warehousing, and bonding, or any other provisions of the Tariff Act of 1930, as amended, and the regulations thereunder; and

(2) the statutes and bonds exacted for the payment of draw-back, refund, or exemption from liability for internal-revenue taxes and for the purposes of the internal-revenue laws generally and the regulations thereunder.

Such a transfer may also be considered an exportation for the purposes of other

Federal laws insofar as Federal agencies charged with the enforcement of those laws deem it advisable. Such articles may not be returned to customs territory for domestic consumption except where the Foreign–Trade Zones Board deems such return to be in the public interest....

Section 313 of the Tariff Act of 1930, Pub.L. No. 96–609, 94 Stat. 3560 (1980) (codified as amended at 19 U.S.C. 1313(j) (1988)) provides in part:

(1) If imported merchandise, on which was paid any duty, tax, or fee imposed under Federal law because of its importation—

(A) is, before the close of the three-year period beginning on the date of importation—

(i) exported in the same condition as when imported, or

(ii) destroyed under Customs supervision; and

(B) is not used within the United States before such exportation or destruction;

then upon such exportation or destruction 99 per centum of the amount of each such duty, tax, and fee so paid shall be refunded as drawback.

## CONTENTIONS OF THE PARTIES

Plaintiff contends that the New Rule T.D. 89–4, effective Feb. 27, 1989, 19 C.F.R. § 146 (1989), that was adopted by Customs, is contrary to the statute and unlawful on its face. Furthermore, plaintiff urges that defendant lacked legal justification to revoke a pre-existing practice since the practice resulted from a reasonable and long-standing interpretation of the relevant statute. *Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross–Motion for Summary Judgment* (Plaintiff's Memorandum) at 1.

Plaintiff points out that to reduce its costs relative to competing with foreign-built vehicles, it established an extensive purchasing and delivery system in connection with its foreign-trade zone facilities. It purchased imported components from vendors who were obligated to warehouse and test the components in the United States. The components were designated for delivery to plaintiff's manufacturing facilities in foreign-trade zones on an "as needed" basis, so that they were transferred to the zone facilities at a time for immediate utilization in manufacturing. In reliance on several Customs rulings which interpreted and applied the Foreign Trade Zones Act, plaintiff invested funds and expanded its systems to better utilize the zones. *Plaintiff's Response to Defendant's Statement and Plaintiff's Additional Statements of Material Facts as to Which There Is No Genuine Issue to Be Tried* (Plaintiff's Response) at 2, 3. Plaintiff also points out that the New Rule will require Chrysler to abandon the system it developed, which was sanctioned by Customs, and will force the dismissal or retraining of employees hired and trained to operate the system.

Plaintiff indicates that as an original equipment vehicle manufacturer in the automotive industry, it buys vendor-supplied components on a model-year basis. Plaintiff argues that these contractual obligations were made at prices contemplating the old practice sanctioned by Customs which allowed claims for drawback for imported merchandise brought into a foreign-trade zone for manufacturing. Plaintiff Chrysler asserts that if the New Rule is to prevail, it will incur unanticipated additional costs on components contracted for prior to the New Rule. It will incur thereafter excessively high costs because it will be unable to recover the duties paid by its vendors. Plaintiff's Response at 5.

Defendant contends Congress authorized the payment of drawback upon duty-paid merchandise admitted to a foreign-trade zone only when brought into a foreign-trade zone *solely* for the purpose of exportation or destruction, citing 19 U.S.C. §§ 81c(a) and 1313(j). Defendant's Memorandum at 20. Since the imported merchandise was imported for manufacture rather than exportation or destruction, no drawback claims were authorized by Congress. Defendant's Memorandum at 21.

Defendant urges that Customs interpretation of Rule T.D. 89–4 is reasonable, is supported by statutory legislative history and applicable regulations, and should be sustained. Defendant's Memorandum at 21.

## DISCUSSION

This Court is presented with the question of whether Customs correctly denied plaintiff's claim for drawback for duty paid on foreign merchandise which was transferred to a foreign-trade zone for the express purpose of manufacturing, where plaintiff planned to return the merchandise to the Customs territory of the United States. If the transferred foreign merchandise is considered "exported" for the purpose of drawback claims, plaintiff is entitled to be paid on its claim. If the merchandise is not considered "exported" for the purpose of drawback claims, plaintiff is not entitled to a refund.

Customs initially determined that imported merchandise entered under a temporary import bond for processing in the United States and transferred to a foreign-trade zone for manufacturing would be considered "exported" for customs purposes. In its previous ruling, which was overturned by T.D. 89–4, imported steel cut to specifications and transferred to a foreign-trade zone to be used to manufacture motor vehicles for domestic consumption was considered "exported" for Customs purposes. The ruling provides in part as follows:

> All merchandise may be brought into a zone unless it is specifically prohibited from coming into the zone by some provision of the FTZ Act. When such merchandise will be used in manufacturing in a FTZ, it is considered exported (except when otherwise indicated in the FTZA) for Customs purposes when brought into the zone. If thereafter the merchandise is manufactured in the zone into new and different articles, ... the manufactured articles may, upon the payment of proper duty, be admitted to the Customs territory.

C.S.D. 84–97, 18 Cust.Bull. 1069 (1984), republished as C.S.D. 85–10, 19 Cust.Bull. 509 (1985).

Customs, through Headquarters Ruling Letter 218551 (Jan. 29, 1986) which was similarly overturned by T.D. 89–4, expressly allowed (citing as authority C.S.D. 84–97 and C.S.D. 85–10) the payment of duty drawback claims or the cancellation of temporary importation bonds for imported merchandise transferred to a foreign-trade zone for manufacturing of motor vehicles for domestic consumption.

T.D. 89–4, which overturned C.S.D. 84–94 (also published as C.A.D. 85–10 and Headquarters Ruling Letter 218551), determined that since the Foreign Trade Zones Act provided no authority permitting merchandise to be considered exported when it was sent to a foreign-trade zone in the United States for manufacturing, no claim for drawback should be allowed. *See supra* note 2.

When Congress first made provision for foreign-trade zones, it was perceived that these zones would relieve businesses from the burden of paying duties on imported merchandise and then having to seek drawback upon exportation, or employing bonds or bonded warehouses for export duties. H.R.Rep. No. 1521, 73rd Cong., 2d Sess. 2–3 (1934). The Senate Report, explaining the purpose of foreign-trade zones and quoting from an earlier report of the Tariff Commission stated:

> The purpose of a foreign-trade zone, as stated in that report, is—
> to encourage and expedite that part of a nation's foreign trade which its government wishes to free from the restrictions necessitated by customs duties. In other words, it aims to foster the dealing in foreign goods that are imported, not for domestic consumption, but for re-export to foreign markets and for conditioning, or for combining with domestic products previous to export.

S.Rep. No. 905, 73rd Cong., 2d Sess. 1, 2 (1934).

While section 3 of the original Foreign Trade Zones Act provided that foreign and domestic merchandise could be brought into the foreign-trade zone without being

subject to the Customs laws of the United States, it expressly barred the manufacture of foreign or domestic merchandise in a foreign-trade zone. Foreign Trade Zones Act, ch. 590, § 3, 48 Stat. 999 (1934) (current version at 19 U.S.C. § 81c (1988)).

In 1950, section 3 of the Foreign Trade Zones Act was amended to permit manufacturing in foreign-trade zones and added a fourth proviso which authorized drawback on certain merchandise taken into the zone. Pub.L. No. 566, 64 Stat. 246–47 (1950) (codified as amended at 19 U.S.C. § 81c (1988)).

The Senate Report explaining the implementation of the fourth proviso concerning the then new drawback provision said:

> This section would add to section 3 of the act a new fourth proviso that under the rules and regulations of the controlling Federal agencies articles taken into a zone from customs territory for the sole purpose of exportation, destruction ..., or storage would be considered to be exported for the purpose of certain Federal laws.... Therefore a transfer of an article from customs territory to a zone for any of the authorized purposes would be considered the equivalent of exportation so far as any provision of the tariff act is concerned. Articles manufactured in customs territory with the use of imported duty-paid materials could be transferred to a zone and draw-back of duties would thereupon become payable without actual exportation. Imported merchandise in customs bonded warehouse or otherwise under customs bond could be transferred to a zone and liability under the bonds extinguished to the same extent, and subject to all other requirements and regulations, as if actually exported.

S.Rep. No. 1107, 81st Cong., 1st Sess. 4–5 (1949), *reprinted in* 1950 U.S.Code Cong. Serv., pp. 2533, 2536–37.

The Senate Report stated further:

> The benefits of the fourth proviso would be limited specifically to articles taken into a zone for *exportation*, destruction, or storage, *and would not apply to articles taken into a zone* for consumption, or *with the intent of eventual reentry into customs territory.* The benefits would not extend to articles taken into a zone for manipulation or manufacture prior to exportation. The proviso would furnish relief for manufacturers and other business interests whose merchandise is destined eventually for export use but which merchandise, for one reason or another, cannot practicably be exported immediately. In such cases the proviso would authorize refund by way of draw-back of duties and taxes while the merchandise remained in a zone awaiting actual exportation, and would also relieve the interested parties from expense and liability of customs and internal-revenue bonds. Imported merchandise which had been stored in a customs bonded warehouse for almost the full statutory time limit of three years could, under the provision, be transferred to a zone for further storage pending actual exportation. Another use of the proviso might be in the encouragement of the establishment in foreign-trade zones of world markets for various commodities.

> Articles receiving the benefits of the proviso could be shipped in bond through customs territory in process of exportation, but could not be returned from the zone to customs territory for domestic consumption except where the Foreign–Trade Zones Board deemed such return to be in the public interest in which event the articles would be subject to a duty equal to the duty and tax from which they had previously been relieved in accordance with the provisions of paragraph 1615(f) of the Tariff Act of 1930 as amended.

*Id.* at 5 (emphasis added), 1950 U.S.Code Cong.Serv., p. 2537.

The House Report sets forth a similar explanation of the function of the fourth proviso and contains an explanation as to the limitation on merchandise that can qualify for drawback claims under the fourth proviso which are identical to those in the Senate Report. H.R.Rep. No. 957, 81st Cong., 1st Sess. 4–5 (1949), *reprinted*

*in* 1950 U.S.Code Cong.Serv., pp. 2533, 2536–37.

It has long been established that as a rule of statutory construction, courts should treat the plain language of a statute as controlling absent clear legislative intent to the contrary. *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). *Consumer Protection Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The terminology set forth in 19 U.S.C. § 81c(a) is quite clear. Claims for drawback should be allowed only on the specific grounds authorized. *See supra* note 3.

This Court finds that the plain language of the relevant statutes is unambiguous and concludes that the legislative history further emphasizes Congress never intended to authorize drawback claims for merchandise brought into foreign-trade zones for the purpose of manufacturing with ultimate use for domestic consumption as sought by plaintiff. *See* S.Rep. No. 1107, 81st Cong., 1st Sess. 4–5 (1949), 1950 U.S. Code Cong.Serv., pp. 2536, 2537; H.R.Rep. No. 957, 81st Cong., 1st Sess. 4–5 (1949), 1950 U.S.Code Cong.Serv., pp. 2536, 2537. The Supreme Court held in *Campbell v. United States,* 107 U.S. 407, 413, 2 S.Ct. 759, 764, 27 L.Ed. 592 (1882) that "[t]he purpose of the drawback provision is to make duty free, imports which are manufactured here and then returned whence they came or to some other foreign country,—articles which are not sold or consumed in the United States."

■ This Court holds imported merchandise, which is transferred to a foreign-trade zone for the purpose of manufacturing for ultimate domestic consumption, is subject to liquidation *without* drawback.

The Supreme Court held in *Swan & Finch Co. v. United States,* 190 U.S. 143, 146, 23 S.Ct. 702, 703, 47 L.Ed. 984 (1903) that the right to drawback is a privilege granted by the government and any doubt as to the construction of the statute must be resolved in favor of the government. *Id.* "Over the years, the courts have held that the allowance of drawback is a privi-

lege and compliance with the regulations is a prerequisite to securing it where the regulations are authorized and reasonable." *Lockheed Petroleum Services, Ltd. v. United States,* 4 CIT 25, 28–29, 557 F.Supp. 583, 586 (1982) (citing *United States v. Ricard–Brewster Oil Co.,* 29 CCPA 192, C.A.D. 191 (1942); *Garret–Hewitt Int'l v. United States,* 65 Cust.Ct. 656, C.D. 4154 (1970).

■ Even if this Court were to interpret a statute differently, in a first instance situation, if an interpretation of a statute by an agency charged with its execution is reasonable, it should be followed unless there are compelling indications the interpretation is wrong. *Chevron U.S.A., Inc. v. National Resources Def. Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). Customs made a reasonable interpretation of the purposes of the Foreign Trade Zones Act. It gave public notice of its intentions to revoke the prior rulings which permitted drawback claims under circumstances similar to the instant case and accepted almost one hundred comments in response to its notice. T.D. 89–4, 53 Fed.Reg. 52,411, 52,412 (Dec. 28, 1988).

Furthermore, as Senior Judge Maletz of this Court has pointed out:

> Agency practice, once established, is not frozen in perpetuity. Agencies frequently adopt one interpretation of a statute and then, years later, adopt a different view. As long as the new interpretation is consistent with Congressional intent, an agency may make a 'course correction.'

*Toyota Motor Sales, U.S.A., Inc. v. United States,* 7 CIT 178, 193, 585 F.Supp. 649, 661 (1984), *aff'd,* 753 F.2d 1061 (Fed.Cir.1985). This Court holds that T.D. 89–4 is reasonable, lawful, and must be sustained.

According to plaintiff, Customs was without authority to revoke its previous practice unless clearly wrong. Memorandum of Plaintiff at 41. Plaintiff urges that the Foreign Trade Zones Act expressly authorizes drawback for merchandise sent to a foreign-trade zone for manufacture.

Plaintiff contends Congress acquiesced in the previous determination by Customs which allowed drawback. Plaintiff's Memorandum at 25, 26. This Court finds these contentions are without merit.

 As set forth in the determination by Customs, where an agency interpretation of legislation is clearly erroneous, Congress must give express consideration or make specific reference to it in later legislation in order to ratify that interpretation citing *Kristensen v. McGrath,* 179 F.2d 796, 803–04 (D.C.Cir.1949), *aff'd,* 340 U.S. 162, 71 S.Ct. 224, 95 L.Ed. 173 (1950); *United States v. Mo. Pac. R.R. Co.,* 278 U.S. 269, 280, 49 S.Ct. 133, 137, 73 L.Ed. 322 (1929). There has been no such ratification by Congress.

Notwithstanding the holding in this case, this Court is not unmindful of the frustrations of plaintiff. Plaintiff has apparently made long-term business decisions involving substantial sums of money based in large measure upon its understanding that Customs would allow drawback claims for foreign merchandise on which duty was paid when the merchandise was admitted into a foreign-trade zone for the express purpose of manufacture.

If plaintiff acquired foreign automotive parts outside the Customs territory of the United States and manufactured its product outside the Customs territory of the United States to save costs, there would be no drawback claim question. There would be no domestic manufacturing jobs either. Concomitant concerns of domestic parts manufacturers and suppliers represented by amici must also be considered.

In any event, the Courts and administrative agencies are powerless to remedy these frustrations. Relief, if it is to come at all, must come from Congress.

### CONCLUSION

Defendant's motion for summary judgment is granted and the complaint is dismissed. Plaintiff's cross-motion for summary judgment and the request to declare the transfer of merchandise to a foreign-trade zone for the purpose of manufacture constitutes exportation and that T.D. 89–4 is erroneous and unlawful is denied. Plaintiff requests that the entry which is the subject of this action be reliquidated with drawback allowed is denied. This Court makes no determination as to defendant's motion to strike the affidavit of an attorney and former employee of the U.S. Customs Service as an attachment to plaintiff's cross-motion papers, deeming such determination unnecessary in light of the holding herein.