NADEL INDUSTRIES, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Consolidated Court No. 92–11–00722

(Decided April 20, 1995)

*Wasserman, Schneider & Babb, (Bernard J. Babb)* for plaintiff.
*Frank W. Hunger,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Barbara A. Silver),* of counsel: *Karen P. Binder,* Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service for defendant.

## OPINION

MUSGRAVE, *Judge:* Plaintiff initiated this action to challenge the United States Customs Service's ("Customs") reliquidation of plaintiff's subject articles. Plaintiff moves for partial summary judgment pursuant to Rule 56 of the Rules of the United States Court of International Trade. Customs filed a cross-motion for summary judgment. The Court has jurisdiction under 28 U.S.C. § 1581(a) and, for the reasons which follow, enters judgment for Customs.

## BACKGROUND

The underlying facts pertaining to this action are not in dispute. Nadel Industries, Inc. ("Nadel"), and Customs agree that the subject articles were entered in 1986. The articles consist of a tray with a base of mirrored glass. The base of the mirror is rectangular in shape and measures eight inches by eleven inches. *See* Amended Complaint, at 3. There are four metal posts mounted on the base's surface, and each post is located at each corner, approximately one-half inch from each edge of the base. Glass rods run from one post to another along the edge of the base's top. In addition, four rubber feet are mounted near the corners of the articles on the base's bottom. The feet are connected to the metal posts which protrude through the base, by nuts.

The articles, when in use, rest on a vanity in a bathroom or on a bureau in a bedroom. Decorative perfume or cosmetic bottles, cologne atomizers, and other similar containers are placed to stand on the reflecting surface. The articles reflect images of the perfume and cosmetic bottles, *etc.*, placed on its reflecting surface. *Brief In Support Of Plaintiff's Motion For Partial Summary Judgment ("Plaintiff's Memo"),* at 3–4.

The articles were entered and liquidated under item 544.51, Tariff Schedules of the United States ("TSUS"), duty free as mirrors under the General System of Preference. On June 6, 1986, Customs reliquidated the articles under item 546.66, TSUS, as household glassware. Certain

other entries were liquidated under item 546.62, TSUS, as cut or engraved glassware.[1] The remaining entries were liquidated under 546.66, TSUS. Items 546.62 and 546.66, TSUS, are dutiable at a rate of 15% *ad valorem.*

Nadel protested the liquidations on the ground that the articles are properly classifiable under 544.51, TSUS, duty free, as mirrors with a reflecting area not over one square foot.

### STANDARD OF REVIEW

Customs' classification decision is presumed to be correct and the party challenging the decision has the burden of overcoming this statutory presumption. 28 U.S.C. § 2639(a)(1) (1988). To determine whether an importer has overcome the statutory presumption, the Court "must consider whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States,* 733 F.2d 873, 878 (Fed. Cir. 1984).

Furthermore, in the case at hand, the issues involve the statutory interpretation of the tariff provision for mirrors, which Customs is charged with administering. As stated in *Chrysler Motors Corp. v. United States,* 14 CIT 807, 815–816 (1990), 755 F. Supp. 388, *aff'd,* 945 F.2d 1187 (Fed. Cir. 1991):

> [I]f an interpretation of a statute by an agency charged with its execution is reasonable, it should be followed unless there are compelling indications the interpretation is wrong. *Chevron U.S.A., Inc. v. National Resources Def. Council, Inc.,* 467 U.S. 837, 843–44 (1984).

### DISCUSSION

This case is before the Court on cross-motions for summary judgment. Under the rules of this Court, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(d). The Court will deny summary judgment if the parties present "a dispute about a fact such that a reasonable trier of fact could return a verdict against the movant." *Ugg Int'l, Inc. v. United States,* 17 CIT 79, 83, 813 F. Supp. 848, 852 (1993) (quotation and citation omitted). "In assessing the parties' claims, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the party opposing summary judgment." *Id.*

This case does not present any genuine issue of material fact, certainly none of the facts are disputed, nor are there any claimed facts which would be enlarged upon or further explained by trial and cross-examination. The dispositive issues to be resolved are legal in nature.

---

[1] The record is unclear as to why certain entries were liquidated under item 546.66, TSUS, as household glassware, and others under item 546.62, TSUS, as cut or engraved glassware. In any event, this issue does not affect the case at hand because both items have the same duty rate.

Therefore, the Court concludes the parties' conflict raises questions of law which the Court may properly resolve by summary judgment.

The Court begins its review by examining the statute involved. Items 546.62 and 546.66, TSUS, under which the articles were classified provides as follows:

> Articles chiefly used in the household or elsewhere for preparing, serving, or storing food or beverages, or food or beverage ingredients; smokers' articles, household articles, and art and ornamental articles, all the foregoing not specially provided for:

> \*     \*     \*     \*     \*     \*     \*

> Other glassware* * *

> \*     \*     \*     \*     \*     \*     \*

> Valued over $3 each:
>> Cut or engraved:
>>> Valued over $3 but not over $5 each

> \*     \*     \*     \*     \*     \*     \*

| 546.62 | Other | 15% ad val. |
|---|---|---|

> \*     \*     \*     \*     \*     \*     \*

| 546.66 | Other | 15% ad val. |
|---|---|---|

The tariff provision, item 544.51, TSUS, which plaintiff claims applies to the articles, provides as follows:

> Mirrors, made of any of the glass described in items 541.11 through 544.41, with or without frames or cases (except framed or cased mirrors of precious metal, and mirrors designed for use in instruments):

> Not over 1 sq. ft. in reflecting area * * * Free (A, E)

Nadel argues that item 544.51, TSUS, is an *eo nomine* tariff provision.[2] As a consequence, Nadel argues that item 544.51, TSUS, includes all forms of mirrors made from any glass described in items 541.11 through 544.41, TSUS (except framed or cased mirrors of precious metal and mirrors designed for use in instruments). Accordingly, Nadel argues that the articles are properly classifiable under the provision for mirrors.

Customs argues that the articles are vanity trays which are not used primarily as mirrors. Customs asserts that the articles are used as both trays and articles which reflect objects placed upon them. Accordingly, Customs argues that judicial precedent mandates that the twin functions of the articles prevents classification as mirrors because the articles are significantly "more than" a mirror. *The English Corp. v. United States,* 64 CCPA 84, C.A.D. 1187, 553 F.2d 1258. Specifically, Customs contends that in determining whether the articles are more than simply a mirror, the common meaning of the term mirror in item 544.53,

---

[2] An *"eo nomine"* designation is one which describes commodity by a specific name, usually one well known to commerce. Ordinarily, use is not a criteria in determining whether merchandise is embraced within *eo nomine* provision, but use may be considered in determining identity of *eo nomine* designation. Black's Law Dictionary 535 (6th ed. 1990).

TSUS, must be compared to the articles at issue. By virtue of the fact that the articles contain feet and railings designed to hold objects, Customs argues that they exceed the common meaning of the tariff term "mirrors."

The "more than" test is one of the basic tests for determining whether an item is within an *eo nomine* classification item. In particular, the Court has summarized the "more than" test as follows:

> When an article is in character or function something other than as described by a specific provision in the tariff schedule, either more limited or more diversified, and the difference is significant, it cannot be classified within that provision.

*Nestle Refrigerated Food Co. v. United States,* 18 CIT 661, 664, Slip Op. 94–118 at 6 (July 20, 1994) (appeal filed Dec. 15, 1994) (citing *Robert Bosch Corp. v. United States,* 63 Cust. Ct. 96, 103–04, C.D. 3881 (1969); *see also Flex Track Equip., Ltd. v. United States,* 65 Cust. Ct. 119, 124, C.D. 4063 (1970) (holding that an item may have several features that permit it to serve multiple functions which, in sum, characterize the item more than any single feature), *aff'd,* 59 CCPA 97, 458 F.2d 148 (1972). Thus, the ultimate issue in this case is whether the articles possess features substantially in excess of those within the common meaning of the *eo nomine* term.

Preliminarily, the Court notes that the dictionary definition of the term "mirror" as "a polished or smooth substance that forms images by the reflection of light." *Webster's Third New International Dictionary* 1441 (1993). The Court finds, however, that the dictionary definition of "mirror" fails to describe the subject articles completely; rather, it describes one ancillary feature of the article. The definition essentially describes the mirrored base component of the articles. This is not, however, the only element of the articles.

Other significant elements of the articles are the legs and rails. As admitted at deposition by Mr. Murray Nadel, authorized representative of Nadel, the rails prevent bottles placed on the *tray* from falling over the edge or slipping off. *See Plaintiff's Memo,* Exhibit C at 51 (emphasis added). Naturally, the feet allow the articles to be place safely on other surfaces. It follows from the articles' design that it enables objects placed upon them from falling off as well as permitting the articles to be picked up and moved. In fact, these characteristics correspond to that of Nadel's own admission—*a tray.* The dictionary defines a "tray" as "an open variously shaped receptacle of wood, metal, or other material with a flat bottom and a low rim for holding, carrying, or exhibiting articles." *Webster's Third New International Dictionary* 2434 (1993).

Furthermore, in his deposition, Mr. Nadel acknowledged that when the company which placed the order with Nadel for manufacture of the articles described their desired product, they had a tray in mind. Specifically, Nadel testified that the company "showed [Nadel] a tray with bottles on it." *See Plaintiff's Memo,* Exhibit C at 45.

In summary, Customs' classification of the articles as a "tray" focuses on the primary features, design, and purpose of the articles. The evidence is clear that the legs and rails alter the fundamental characteristics and identity of the mirrored base component. Consequently, the Court holds the articles do not fall within the statutory definition of "mirrors" and are properly classified as glassware for household use.

### CONCLUSION

After considering both parties' contentions, the Court holds that the articles were properly reliquidated under items 546.62 and 546.66, TSUS. Nadel's partial motion for summary judgment denied. Customs' motion for summary judgment granted.